May it please the Court, Your Honor, Counsel, and the Clerk, my name is Michael Greco and I represent the plaintiff appellant Fiona Chen. This is a civil rights violation case. As the District Court Judge Johnston pointed out, a prior iteration of the case resolved any employment discrimination cases. So what remains, and Judge Johnston did dismiss the claims with prejudice, is argument for a 42 U.S.C. section 1985 subsection 3 claim of conspiracy to violate civil rights and arguably a malicious prosecution under state court. The first amendment complaint is inartfully pleaded. That's no be a significant understatement. It is difficult to read in parts and somewhat lengthy. It does however set forth the basic allegations of a racial animus that the appellant submits that she was subjected to by the defendants. Mr. Greco, I'd be interested in your thoughts on whether there's a statute of limitations issue here and if begun to run. The statute of limitations may have begun to run quite a while ago. Ms. Chen did first learn of the TIGTA investigation in 2000, in 2009. She did not know that it was ongoing. She learned that it was ongoing. She alleges in her complaint in 2018 through 2020. This case was filed I believe in 2021. 2020 I think. 2020. Sorry, Judge. Yes. And the argument that we would have is the discovery rule as well as waiver. The statute of limitations has not been explicitly pleaded, I don't believe, in this. Well, not before this court. It was not addressed by the district court. But the discovery of the potential ongoing investigation within the TIGTA arm of the Treasury Department and subsequently the ECHO, that's another acronym within the Treasury Department, was not discovered by Ms. Chen until 2018 through 2020 and discovery of the original iteration of the Chen case. Mr. Greco, what's Ms. Chen's best argument that she survives a motion to dismiss under 12b-6 not 12b-1? Right, under 12b-6 the best argument is she put forth the allegations of her differential race or differential national origin. She alleged that she's Asian American and that she is a Chinese American and she alleged that she was the only person of those groups in the work group that she was working with for the Department of Education. An argument that what could be proved we submit under the allegations of the complaint is that the treatment that she received and the exchange of confidential information between the NTEU steward with Ms. Chen's superiors and co-workers, Jamie Kildnick and Gail Trier and Rebecca Solano, was targeted to her on the basis of her race and national origin, which is Asian and Chinese American. That's the best argument. Mr. Greco, the district court had a judgment on motion for summary judgment. I believe that the district... That was an error. That was an error, yes Judge. Well did either party move to correct that error? Neither party moved to correct the error. It's clear, Your Honor, from the text of the memorandum of opinion and order that the Judge Johnston was addressing a 12B6 motion. So is this just a harmless error? I would submit that it's a harmless error. Thank you. Yes. So in any event, we submit that with the allegations of the ongoing investigation of Ms. Chen within an arm of the According to her allegations, and her allegation that she had an adverse effect on her ability to reapply or regain employment within the Treasury Department, that she has made the gist of a constitutional claim as to the deprivation of that potential avenue of employment, that property interest. So that is as best I can frame it under Ashcroft versus Sitball, Bell Atlantic versus Plum. We believe that it's, again, in our fully pleaded, no question about it, but we submit that it's been put forth. As for the malicious prosecution, that also is a problematic argument because as Judge Johnston observes, much of the post-employment conduct that's set forth in the amended complaint is obviated by the fact that, well, is negated, in effect, legally by the fact that there never was a criminal prosecution of Ms. Chen. So there's no question that's a barrier as to the Fourth Amendment claims. There was no seizure, no arrest, and the Fifth and Sixth Amendment claims, both of which presuppose a criminal prosecution and involvement of criminal process. I submit that it's a matter of state court. State court does recognize malicious prosecution for either a criminal proceeding or a civil proceeding. There was no judicial proceeding, as Judge Johnston observed, against Ms. Chen. However, the ongoing maintenance of an investigation against her, even if it never ripens into an actual case before an agency or a case in the courts, is arguably a civil proceeding on which it's a non-criminal civil event or set of circumstances which could cause her harm. It could cause her the inability, again, to regain her life. So that's a less persuasive argument. I couldn't find compelling case law to support that, but primarily we maintain that under 1985, subsection 3, that the allegations of the amended complaint put forth that there was a conspiracy and it was targeted to Ms. Chen, at least in part based on her national origin and her racial background, which is Chinese-American and Asian and different from all of her other co-workers, as she alleged, and that we have the gist of a constitutional claim concerning that conspiracy. Mr. Greco, would any of Ms. Chen's claims against some of the other government employees fall under the rubric of unfair labor practice versus just a claim by her against them in an unfair labor practice? That argument, I mean, that certainly was found by Judge Johnson. We submit that the conspiracy claim against Lesha Panepinto, in particular, that's alleged, is not strictly a failure of the duty of, or a violation of the duty of fair representation or an unfair labor practice. The confidentiality of directed to her activities, directed to the actions that she was being subjected to and pursuing on her own, were intended to be confidential, that's alleged in the complaint, and the breach of that confidentiality, it's not, although it would certainly support a violation of the duty of fair representation, that it's not the exclusive remedy for that. I submit that it would not be, it would not preempt inclusion of Lesha Panepinto as a defendant in a 1985 subsection 3 conspiracy argument. So that, on those bases, we believe that there is the gist of a claim put forth in the complaint as alleged by Ms. Chen, the amended complaint as alleged by Ms. Chen, and I don't believe that those were all entirely comprehensively addressed by Judge Johnson, and to the extent that we were, we submit that the complaint merits another look or leave to amend. Very good. Would you like to reserve the remainder of your time? I'll reserve the remainder of my time if I may, Judge. Yes, you may. Thank you, Mr. Greco. We're now going to move to oral argument from Ms. Horne. May it please the court, I'm Jessica Horne, counsel for the NTU at Police, and for these first three minutes, I'll be arguing that the district court should have dismissed Ms. Chen's claims against the NTU at Police for lack of subject matter jurisdiction, instead of her failure to state a claim. That's because Ms. Chen's claims against the NTU at Police, her claims that Lesha Panepinto, her union steward, disposed confidential information about her, and her claims that her other NTEU reps failed to adequately serve her interests, amount to claims for breach of the duty of fair representation. Under the Civil Service Reform Act's comprehensive scheme of administrative and limited judicial review, Congress channeled review of such claims exclusively to the Federal Labor Relations Authority, and it would frustrate Congress's scheme to allow Ms. Chen to circumvent FLRA review simply by labeling her claims as civil rights violations or malicious prosecution. Now the district court declined to dismiss on subject matter jurisdiction grounds in part because Ms. Chen did not explicitly list a breach of the duty of fair representation among the counts in her complaint, but as the First Circuit said in Montplaisir v. Layton, the court should look at the conduct being regulated and not the formal description of legal claims. Those are just window dressing. Here, the conduct that Ms. Chen complains is illegal. It's conduct that is regulated by the CSRA. The CSRA describes a union's duty of fair representation in 5 U.S.C. section 7114a.1 as the duty to represent the interests of employees in the unit without discrimination. Here, Ms. Chen claims that the NTU at Police acted against her interests and instead served the interests of her managers, and she claims that her NTU reps were motivated by racial discrimination. These are claims that the CSRA scheme channels to the FLRA, and in fact other courts that have confronted claims just like Ms. Chen's civil rights claims under 42 U.S.C. sections 1985 and 1986 have viewed those claims as duty of fair representation claims dressed up as something else and have dismissed them as precluded by the CSRA. Ms. Horne, do you want to comment? You can defer to counsel, however you want to handle it. I think I'll defer to my co-counsel on that issue as the statute of limitations is a I think a 12b6 issue. I'm addressing the jurisdictional issues here, and so in addition to noting that Ms. Chen did not explicitly list a breach of the duty of fair representation among the counts of her complaint, the district court also observed that Chen repeatedly asserted that her case addresses only the time after she resigned from the IRS, but if you look at the specific allegations against the NTU defendants in particular, everything suggests that she is trying to revive and relitigate her the events that led to her the TICTA investigation in 2007 and her resignation in 2008, and I will defer to co-counsel on the remaining issues. Thank you very much, Ms. Horne. We'll now hear from Ms. Mallory. Good morning. May it please the court? Counsel? Counsel? In this case, Chen's complaints specifically in crux alleges that she was subjected to a criminal investigation that began in 2007. She resigned in 2008, and that investigation continued from that time until now in secrecy. She alleges she was maliciously prosecuted when she was referred to TICTA in 2007 for that investigation, which was into her work conduct, and that thereafter, the investigation, even though it didn't give rise to a criminal prosecution, she nevertheless, because she was subject potentially to a criminal prosecution, that she was being maliciously prosecuted. The district court properly concluded that the key allegations necessary to support her claim were not plausible. Her allegation about a secret criminal investigation reflected unsupported and irrational speculations and conclusions, and the district court, although it more directly than I was able to do, saw within the complaint that he could move aside all of the allegations about employment discrimination or that related to the previous case and focus in on the counts in this case. He did not, I do not believe, accept the findings of this act in the previous case as the findings in his case. What he did do after he moved aside those employment discrimination allegations and focused in on the allegations with respect to the actual counts alleged, Fifth, Sixth Amendment violations, Section 1985, 3 violation, and malicious prosecution claims, he focused in on the allegations that were not subject to reasonable dispute, and admittedly the prior litigation has some play in that. The conclusions that the district court drew from Ms. Chen's allegations and his analysis of their plausibility are that her allegations were not plausible and in some cases frivolous. With respect to the Fifth Amendment claim, the court found that no criminal proceeding was ever commenced against Ms. Chen, a fact that was not disputed by her in her complaint at paragraph 125. She concedes that point and also in her response to the federal defendants motions to dismiss, she conceded that she had not been prosecuted. She did not suffer a Sixth Amendment violation because having not been prosecuted, her Sixth Amendment rights had not yet been activated. There was no criminal proceeding with which for her to assert those rights, nor could she pursue a claim absent a prosecution, an element that is required of a malicious prosecution claim. Counsel, in argument, I believe in response to a question from the court, raised that the state malicious prosecution law might allow a claim for an ongoing investigation against her as a qualifying proceeding. That was not raised in the briefing, so we have not looked into that to respond to that, but I don't believe the law is strong on that case. I believe that there has to be some sort of proceeding and perhaps it can be a civil proceeding, but this investigation is not a proceeding. If that were true, then virtually any investigation undertaken by an organization, a government agency, a law enforcement entity, would be something that you could bring a malicious prosecution claim just because the investigation is ongoing, and that seems untenable. Finally, with respect to Ms. Chen's Section 1985-3 Conspiracy Claim, it's not supported by a non-frivolous and plausible allegation about class-based animus. What she does is she alleges that she, as an Asian American, is subject to what is a generalized animus in society, generally speaking. She does not point to any conduct by the defendants specifically with respect to her nationality. Instead, she tries to group them with respect to their nationality or their religious affiliations and say because that subgroup, in her opinion, has some animus toward the Asian race that they therefore have that same animus, and that's what motivated them to proceed for now 15 years pursuing a secret investigation. With respect to a loss of any liberty under the Fifth Amendment or any of her other claims, it's a secret investigation according to her allegations. She doesn't know about it. Counsel argues that her damage is the adverse effect on her ability to apply for federal employment or to reapply to this particular agency, but two things. She did not know she was under this secret 15-year investigation that she also did not allege that she ever made an attempt to apply for a position and was rejected. So those allegations, those two allegations, are highly speculative and they do not merit the court accepting them as plausible allegations to support the claims. Ms. Mallory, do you want to speak to that statute of limitations question? I will. I do recall raising it in the district court. I did not raise the argument in this court. In the district court, our position was, as counsel mentioned, she learned in 2009. It's within her allegations of the complaints, clearly out there. She concedes that in 2009, during the EEO part of the case, she learned that there was a TIGTA investigation and that was the first that she heard of it. She did make an inquiry to an agency counsel about that and was assured that it was not criminal, it was civil, and it was closed. She disputes that now based on what she says she learned in 2018 and 2020 during the discovery of the case. The federal defendants are the only ones involved in that case. We do not agree that she learned of this that late. This was something that was known throughout the case. The documentation that she learned in 2020, 2018 even, but that's something that was addressed in the district court. It is not part of our briefing right now. We did not re-raise that. We do believe we have a strong statute of limitations argument. Whether it would have been resolvable on a motion to dismiss without accepting some sort of fact in the Chen-Wen case as a finding of fact in this case, which might not be proper. I don't know that we would have necessarily succeeded, but it is an issue to be raised if the court decides to send this case back down and allow an amendment to complain. Unless there are further questions. No, thank you very much Ms. Mallory. Thank you. We ask the court to defer the district court's decision. Thank you. Mr. Greco, we'll go back to you for rebuttal. May I please support, your honors? The fact that the statute of limitations was not picked up by Judge Johnston in the final memorandum decision and order and was not deemed dispositive by that able judge in dealing with this case in the district court does tend to lend color to Ms. Chen's allegation that she did not know that the TIGTA investigation, which she first heard about in 2009, was actually kept open into 2018 and beyond. She actually averts that she never learned that the TIGTA investigation had been closed, which she submits is a contrary to what she had been informed. She alleges that she was informed that she would receive notice once the and the allegations of the complaint do support that. Tenuous as it seems, we submit that her efforts, which aren't unfortunately set forth in the amended complaint, to regain employment with the Treasury Department or with any federal agency may have been impeded by the ongoing investigation under TIGTA or under, echo the other, investigative agency within the Treasury Department. So for that reason, we don't believe that the statute of limitations would be dispositive of the claims currently advanced before the district court and now on appeal before this court. Again, the statute of limitations can be waived. It's apparent that the government deemed it quite a long way to go as far as digging into all the facts concerning discovery of the ongoing investigation and framing that for 12B motion based on statute of limitations before the district court would have been too cumbersome and they elected to go straight at the fact that there was not a criminal prosecution and that's understandable, that's fine, it appears obviously it was efficient, but as far as the state law, it's accurately recorded by the Swearingen versus Mick decision of this court and under state law for malicious prosecution, a civil proceeding can also be the subject of a case law that specifically includes an internal agency investigation in the rubric of a civil proceeding. The Judge Johnson concentrated on the absence of a judicial proceeding, but we submit that there is potentially some merit to that. But overall, in responding to the lack of jurisdiction argument made by my subsection 2, the argument that Lesha Panepinto's conduct in relating confidential information to Jamie Kilmnik and other individual defendants employed by Treasury Department would be stripped away from the 1985-3 subsection 3 jurisprudence because it's all going to be under the duty of fair representation, we submit that that is not conclusively put forth by the section cited by counsel or by the case law that I've seen. So we do submit that Lesha Panepinto, if no one else from the NTEU union defendants, should be subject to liabilities or should be held to answer an amended complaint or this complaint if the case were remanded for the conspiracy to violate civil rights. If there's no questions... Thank you very much Mr. Greco. Thank you judges. Thank you Ms. Horne. Thank you Ms. Mallory. The case will be taken under revisement.